**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 14-cv-01329-PAB-KMT

LEONA IRVINE,

          Plaintiff,

v.

I.C. SYSTEM, INC., a Minnesota corporation,

          Defendant.

---

**PLAINTIFF'S RESPONSE TO DEFENDANT'S SECOND MOTION FOR SUMMARY
JUDGMENT, CM/ECF # 59**

---

COMES NOW the Plaintiff, by and through her undersigned counsel, David M. Larson, and hereby files this Response to the Defendant's Second Motion for Summary Judgment, CM/ECF # 59, and states as follows:

**FACTUAL BACKGROUND**

The Plaintiff incorporates the factual background contained in the Plaintiff's Motion for Summary Judgment, CM/ECF # 60, filed 11/9/2015, pages 1 and 2 as if fully stated herein.

**RESPONSE TO STATEMENT OF UNDISPUTED MATERIAL FACTS.**

1.     Deny as to the amount owed on the account. See Affidavit of Leona Irvine, CM/ECF # 48-1, filed 9/2/2015, p. 1 - 2, ¶ 5 – 7.

2.     Admit.

3.     Admit.

4.      Deny as to the amount owed on the account. CM/ECF # 48-1, filed 9/2/2015, p. 1 - 2, ¶ 5 – 8.

5.      Admit.

6.      Admit.

7.      Deny. The Plaintiff disputed the account with the Defendant during the telephone conversation with the Defendant regarding the account on March 13, 2014 by repeatedly informed the Defendant that she did not agree with the balance on the account and that she did not owe the balance on the account. CM/ECF # 48-1, filed 9/2/2015, p. 2 and 3, ¶ 11 - 14.

8.      Admit. The Plaintiff sent the payment to the Defendant via first class U.S. mail on March 13, 2014. The Defendant processed the payment on March 18, 2014.

9.      Deny as to the amount owed on the account. CM/ECF # 48-1, filed 9/2/2015, p. 1 - 2, ¶ 5 – 8.

10.     Admit.

11.     Admit.

## STATEMENT OF ADDITIONAL DISPUTED FACTS

1.      Mr. Bacon has no personal knowledge regarding the Plaintiff's account in this case other than by reviewing the account notes. Mr. Bacon did not talk to anybody at Banfield Pet Hospital regarding the account. CM/ECF # 48-2, filed 9/2/2015, p. 23, ll. 3 – p. 24, ll. 14. CM/ECF # 48-3, filed 9/2/2015, p. 25, ll. 7 – 13

2.      Mr. Bacon has no personal knowledge regarding the telephone call between the Plaintiff and the Defendant on March 13, 2014 other than listening to the Defendant's

call recording after the instant case was filed against the Defendant. Mr. Bacon was not a witness to the telephone call on March 13, 2014 between the Plaintiff and the Defendant regarding the account. See partial transcript of Defendant's Witness Ryan Bacon's personal deposition attached as CM/ECF # 48-3, filed 9/2/2015, p. 8, ll. 9 – p. 9, ll. 20.

3.      Mr. Bacon has no personal knowledge regarding the account or what the balance on the account is other than by reviewing the account notes. CM/ECF # 48-3, filed 9/2/2015, p. 10, ll. 11.

4.      On April 1, 2014 the Defendant communicated information regarding the Plaintiff's Banfield Pet Hospital account to via email to Banfield Pet Hospital without communicating that the account was disputed, including: the date, the Plaintiff's name (Leona Shabazz), the Debtor reference number, the amount paid to the Defendant, the amount paid to Banfield Pet Hospital, the fee due the Defendant and the Amount due Banfield Pet Hospital. A column on the document states is entitled "Balance Status" and is empty regarding the Plaintiff's account. See CM/ECF # 60-1, pages 1 -3, filed 11/9/2015, and CM/ECF # 60-2, filed 11/9/2015, p. 15, ll. 1 – 20, p. 16, ll. 19 – p. 21, ll. 23, p. 26, ll. 10 – 18 and p. 27, ll. 2 - 7.

5.      The information that the Defendant communicated via email to Banfield Pet Hospital regarding the Plaintiff's account on April 1, 2014, conveyed information regarding the Plaintiff's account directly or indirectly to Banfield Pet Hospital. CM/ECF # 60-2, filed 11/9/2015, p. 22, ll. 10 – 16, p. 27, ll. 8 – 13 and p. 28, ll. 6 - 12.

6.      Every action the Defendant took regarding the Plaintiff's account is in regards to the collection of the account. CM/ECF # 60-2, filed 11/9/2015, p. 24, ll. 5 – 8.

7.      The Defendant communicated the information regarding the Plaintiff's account to Banfield Pet Hospital on April 1, 2014 in connection with the collection of the account. CM/ECF # 60-2, filed 11/9/2015, p. 24, ll. 20 – p. 25, ll. 5 and p. 28, ll. 13 – 20.

8.      The principal purpose of the Defendant is the collection of debts using the mails and telephone. CM/ECF # 60-3, filed 11/9/2015, p. 28, ll. 14 – 18.

9.      The Defendant regularly collects or attempts to collect directly or indirectly debts owed or due or asserted to be owed or due another. CM/ECF # 60-3, filed 11/9/2015, p. 28, ll. 20 – 24.

10.     The Defendant is a "debt collector" as that term is defined by the FDCPA. CM/ECF # 60-3, filed 11/9/2015, p. 28, ll. 25 – p. 29, ll. 10.

## STANDARD OF REVIEW

The Plaintiff incorporates the Standard of Review contained in the Plaintiff's Response to the Defendant's Motion for Summary Judgment, CM/ECF # 48, filed 9/2/2015, pages 7 and 8 as if fully stated herein.

## ARGUMENT

For the reasons stated below the Defendant's Motion must be denied by the Court as the evidence when viewed in the light most favorable to the Plaintiff could lead a reasonable jury to return a verdict for the Plaintiff as a dispute of material fact exists that creates a genuine issue for trial and precludes entry of summary judgment in favor of the Defendant as the evidence reveals that contrary to Defendant's arguments -

summary judgment should instead enter in favor of the Plaintiff and against the

Defendant as the Defendant violated the FDCPA.

### RYAN BACON'S AFFIDAVIT IN SUPPORT OF DEFENDANT'S MOTION MUST BE REJECTED

Ryan Bacon's Affidavit, CM/ECF # 59-1, filed 11/9/2015, to Defendant's Motion is

a self serving conclusory affidavit that is not based on personal knowledge and is

hearsay and thus must be rejected by the Court. Mr. Bacon's Affidavit does not

establish the his personal knowledge of the information stated in the Affidavit. Mr.

Bacon's Affidavit is also contrary to his testimony both at his personal deposition and his

two depositions as the Defendant's Fed.R.Civ.P. 30(b)(6) Designee in this case so it

should be rejected by the Court as the Affidavit does not meet the requirement for

Affidavits listed in Fed.R.Civ.P. 56(c)(4).

### THE DEFENDANT'S COMMUNICATION REGARDING THE ACCOUNT TO THE CREDITOR ON APRIL 1, 2014 CONSTITUTES A COMMUNICATION

Information regarding the Plaintiff's Banfield Pet Hospital account was conveyed

directly or indirectly to Banfield Pet Hospital on April 1, 2014 via the documents sent via

email to by the Defendant to Banfield Pet Hospital which contained the Plaintiff's name,

debtor reference number, the date of the payment, the amount paid to the Defendant,

the amount paid to Banfield Pet Hospital, the fee due the Defendant and the amount

due to Banfield Pet Hospital thus the information communicated to Banfield Pet Hospital

on April 1, 2014, constitutes a communication as that term is defined by FDCPA

1692a(2).

**DEFENDANT'S COMMUNICATION REGARDING THE PLAINTIFF'S ACCOUNT TO THE CREDITOR ON APRIL 1, 2014 VIOLATE THE FDCPA.**

The Defendant communicated the information regarding the Plaintiff's account to the creditor in connection with the collection of the account on April 1, 2014 without communicating that the account was disputed after the Plaintiff disputed the account with the Defendant via the telephone conversation on March 13, 2014 by stating "Well I don't believe that its that. I don't owe that balance. I don't owe that much.", "I disagree with that balance its just too much and I want to get this settled for less than that." and " I don't understand. I disagree with the balance period.".

This action by the Defendant constitute a false representation which is material for the reasons stated in the Llewellyn v. Allstate Home Loans, Inc., 711 F.3d 1173 (10th Cir. 2013) and thus violates FDCPA 1692e preface and/or 1692e(2)(A) and/or 1692e(8) and/or 1692e(10).

"if a debt collector elects to communicate "credit information" about a consumer, it must not omit a piece of information that is always material, namely, that the consumer has disputed a particular debt." Llewellyn, 711 F.3d at 1189 citing Wilhelm, 519 F.3d 416 (8th Cir. 2008).

The Llewellyn case required the Defendant to communicate the disputed status of the Plaintiff's account to the creditor on April 1, 2014.

"a debt collector does not have an affirmative duty to notify [credit reporting agencies] that a consumer disputes the debt unless the debt collector knows of the

dispute and <u>elects</u> to report to a [credit reporting agency]." <u>Llewellyn</u>, 711 F.3d at 1189.

This is exactly what happened in this case the Plaintiff disputed the account with the

Defendant on the telephone conversation on March 13, 2014 regarding the account and

after that the Defendant elected to communicate information regarding the account to

the creditor on April 1, 2014 without reporting the account as disputed which violated

the FDCPA.

      This Court in the <u>Hudspeth</u> case stated:

      Defendant's argument disregards, however, the wording of the statute, which makes it false or deceptive to communicate to "any person" that a disputed debt is undisputed. *15 U.S.C. ß 1692e(8)*. The plain language of the section indicates that it applies when a collector discloses information regarding a disputed debt to any third party, not just to a credit reporting agency. *See Brady, 160 F.3d at 67* ("ß 1692e(8) requires a debt collector who knows or should know that a given debt is disputed to disclose its disputed status to persons inquiring about a consumer's credit history."); <u>Perez v. Telecheck Servs., Inc.</u>, 208 F. Supp. 2d 1153, 1156 *(D. Nev. 2002)*; <u>Morse v. Dun & Bradstreet, Inc.</u>, 87 F. Supp. 2d 901, 904 n.1 *(D. Minn. 2000)* (noting that *ß 1692e(8)* prohibits "threatening to communicate false credit information to third parties").

      Hudspeth, 2013 U.S. Dist. LEXIS 25260 at p. 7.

      Other Judges in this Court have reached the same conclusion as the <u>Hudspeth</u>

case regarding a debt collectors obligation to report a disputed account to the credit

bureaus or the creditor as disputed when the debt collector communicates information

regarding the account to credit bureaus or creditors after a consumer disputes an

account with the debt collector. See, <u>Baker v. I.Q. Data International, Inc.</u>, 14-cv-00114-

WJM-MEH, 2015 U.S. Dist. LEXIS 56072 (D.Colo. April 29, 2015) and <u>Carter v. Credit</u>

<u>Bureau of Carbon County d/b/a CollectionCenter, Inc.</u>, 14-cv-00873-JLK, 2015 U.S.

Dist. LEXIS 94860 (D.Colo. July 20, 2015).

The FTC Staff Commentary on this issue, 53 Fed. Reg. 50097-02, 501016 (Dec. 13, 1998) also supports Plaintiff's position by holding that if a debt collector knows that a debt is disputed by a consumer and reports the account to a credit bureau, he must report it as disputed and that if the debt collector learns of a consumer's dispute of an account after reporting the debt to a credit bureau, the dispute need not also be reported. The same rationale applies to communications with the creditor as in this case consistent with the plain language of FDCPA 1692e(8).

"[a]s *[Section 1692e(8)]* does not contain an explicit writing requirement, courts have held that it applies to all disputes, even those made orally." *Hudspeth v. Capital Mgmt. Servs., L.P., No. 11-cv-3148-PAB-MEH, 2013 U.S. Dist. LEXIS 25260, 2013 WL 674019, *7 (D. Colo. Feb. 25, 2013)* (citing *Brady v. The Credit Recovery Co., 160 F.3d 64, 67 (1st Cir. 1998))*. "Furthermore, a debt collector cannot require a consumer to have a valid reason or to submit particular types of documentation in order to dispute a debt." *Id.* (citing *DeSantis v. Computer Credit, Inc., 269 F.3d 159, 162 (2nd Cir. 2001))*. "There is no requirement that any dispute be 'valid' for this statute to apply; only that there be a dispute." *Hoffman v. Partners in Collections, Inc., No. 93 C 4132, 1993 U.S. Dist. LEXIS 12702, 1993 WL 358158, *4 (N.D. Ill. Sept. 13, 1993)*. Construing another section of the FDCPA, the Seventh Circuit has held that "[u]nsophisticated consumers, whatever else may be said about them, cannot be expected to assert their ß 1692c(a)(3) rights in legally precise phrases." *Horkey v. J.V.D.B. & Assocs., 333 F.3d 769, 773 (7th Cir. 2003)*.

Carter, 2015 U.S. Dist. LEXIS 94860 at page 3.

A consumer may dispute a debt for a good reason, a bad reason, or no reason at all. Sambor v. Omnia Credit Servs., 183 F.Supp. 2d 1234 (D. Haw. 2002), Mendez v. M.R.S. Assoc., 2004 WL 1745779 (N.D.Ill. Aug 3, 2004). A consumer can orally dispute a debt. Brady v. The Credit Recovery Company, Inc., 160 F.3d 64, 66 (1st Cir. 1988). A consumer can dispute all or part of a debt. 15 U.S.C. § 1692g(a)(3).

In the Carter case the Court found that the Plaintiff in that case had disputed the account despite never saying the specific word dispute at all because the Plaintiff in that case communicated to the Defendant that she had insurance during the entire time and that her insurance should have paid the debt. Carter, 2015 U.S. Dist. LEXIS 94860 at page 3. In this case the Plaintiff made clear that she did not agree that she owed the balance on the account to the Defendant and that she did not owe that much which qualifies as a dispute of the account pursuant to the FDCPA consistent with the caselaw cited above.

"Defendant may be correct that Plaintiff remains ultimately liable for the debt as a matter of contract, but as indicated above, Plaintiff need not prevail on the merits of her argument that she is not liable for the debt in order for the debt to be disputed within the meaning of Section 1692e(8)." Carter, 2015 U.S. Dist. LEXIS 94860 at page 3.

The plain language of FDCPA including 1692e(8) and the 10th Circuit's directive that the FDCPA "should be construed liberally in favor of the consumer" in Johnson v. Riddle, 305 F.3d 1107, 1117 (10th Cir. 2002) required the Defendant to communicate the disputed status of the Plaintiff's account to the creditor after the Plaintiff informed the

Defendant of the disputed nature of the account during the telephone conversation on March 13, 2014.

The plain language of 1692e preface uses very broad language as well – "in connection with the collection of any debt" the statute does not say communications limited to those intended to induce payment from the consumer.

The Defendant's Motion argues that this Court should adopt the Defendant's misinterpreted rationale of the U.S. Court of Appeals for the 8th Circuit in McIvor v. Credit Control Services, Inc., 773 F.3d 909 (8th Cir. 2014), an opinion affirming the District Court granting Judgment on the Pleadings in favor of the Defendant in that case. The Defendant arguments completely misinterpret the Court's rationale in the McIvor case to attempt to support its argument in this case but the reality is the McIvor case does not support the Defendant's arguments and instead supports the Plaintiff's argument that the Defendant's actions violate the FDCPA.

The facts in the McIvor case are as follows:

According to her amended complaint, McIvor used TransUnion's online system on April 2, 2013 to dispute a $242 debt alleged against her by Credit Control. McIvor reported to TransUnion, "Creditor agreed to remove this account from my file. This account is settled." TransUnion reported McIvor's dispute to Credit Control "as part of its reinvestigation required by the Fair Credit Reporting Act, *15 U.S.C. ß 1681 et seq.*" McIvor's complaint alleged that Credit Control then "provided updated credit information regarding the Debt to [TransUnion] on April 20, 2013 without stating that [she] had disputed it," and TransUnion "in turn verified the Debt to [McIvor] on April 21, 2013." McIvor attached exhibits to the complaint showing screenshots of the investigation request she submitted to TransUnion on April 2, her updated credit file dated April 20, and the resolution summary TransUnion provided her on April 21. She claimed that Credit Control's violation "makes it more difficult for Consumer to seek and receive funding."

McIvor, 773 F.3d at 910.

The McIvor Court addressed how the FCRA required Credit Control to respond to Transunion's reasonable reinvestigation of the dispute and that Credit Control's response to Transunion was not an elective report but was required by the FCRA.

The facts in the McIvor case are completely different than what happened in this case and contrary to the arguments in the Defendant's Motion. The arguments in the Defendant's Motion are also contrary to the testimony of the Defendant's witness both as a corporate designee of the Defendant pursuant to Fed.R.Civ.P. 30(b)(6) and in his individual capacity the Defendant in this case discussed above in the Facts Section who testified that the Defendant communicated the information regarding the account to the creditor, Banfield Pet Hospital, on April 1, 2014 in connection with the collection of the account.

The Court in McIvor cites to Edeh v. Midland Credit Management, Inc., 748 F.Supp. 2d 1030 (D.Minn. 2010) in support of its holding and discusses the difference between voluntarily reporting accounts on the collector's own initiative and FCRA required verification of accounts. Consistent with the Court's discussion in the Edeh case the communicating of information regarding the Plaintiff's account to the creditor in this case was done voluntarily on the Defendant's own initiative. For the same reasons the Court in McIvor case found the logic in the Edeh case persuasive on this point this Court should find that the Defendant's voluntary communicating of information regarding the Plaintiff's account to the creditor on April 1, 2014 was done voluntarily in connection with the collection of the Plaintiff's account and since the Defendant did not communicate that the account was disputed to the creditor on April 1, 2014 when it

communicated the information regarding the Plaintiff's account to the creditor the Defendant violated the FDCPA when it failed to communicate that the account was disputed pursuant to FDCPA 1692e(8).

The facts, caselaw and arguments cited above and in the Plaintiff's Response to the Defendant's Motion for Summary Judgment, CM/ECF # 48, filed 9/2/2015 and the Plaintiff's Motion for Summary Judgment, CM/ECF # 60, filed 11/9/2015, incorporated herein by reference as if fully stated herein establishes that the Defendant's actions in this case violated the FDCPA by not communicating the Plaintiff's account as disputed to the creditor when it communicated information regarding the Plaintiff's account to the creditor on April 1, 2014.

The Defendant is asking the Court to ignore the plain language of FDCPA including 1692e(8). For the Court to adopt the Defendant's arguments and misapply the McIvor case according to the Defendant's twisted interpretation the Court would be applying out of circuit caselaw that lacks controlling authority to this case that would eviscerate the protections of the FDCPA and the 10th Circuit's directive that the FDCPA "should be construed liberally in favor of the consumer." in Johnson v. Riddle, 305 F.3d 1107, 1117 (10th Cir. 2002) because it would eliminate the plain language of the statute prohibiting the conduct because the collection agency could always argue that it was simply communication information to the creditor regarding the account but that it was not in connection with the collection of the account and thus not required to report the account as disputed because which is contrary to the Defendant's witnesses testimony in this case that the communication to the creditor regarding the account on April 1,

2014 was in connection with the collection of the account and contrary to the plain language of 1692e preface which uses much broader language – "in connection with the collection of any debt".

Adopting Defendant's argument would mean that a debt collector would be able to communicate with the creditor regarding an account without communicating the disputed status of the account despite the plain language of FDCPA 1692e(8) to the contrary. This is an absurd result and contrary to the plain language of the FDCPA and thus should be rejected by the Court as otherwise the Court is ignoring the plain language of the FDCPA and creating a broad range of communications that are not protected by the FDCPA without any basis or authority.

This Court in the Baker case specifically rejected the "animating purpose" test because doing so would be contrary to the FDCPA's purpose stating:

The Court is not persuaded by the out-of-circuit cases cited by Defendant. *Section 1692e(8)* would lose its teeth if it were subject to the "animating purpose" test. When a debt is not reported as disputed to a third party, the harm to the consumer is the same regardless of the debt collector's motive for making the communication.
Baker, 2015 U.S. Dist. LEXIS 56072 at page 3.

*Section 1692e(8)* shields consumers from the devastating effects of adverse, and incorrect, credit reporting such as that described in *Saunders*. This objective could not be achieved if the statute's application were limited to communications made to induce payment by the debtor.
Baker, 2015 U.S. Dist. LEXIS 56072 at page 4.

The Court therefore declines to apply the "animating purpose" test to claims under *ß 1692e(8)*, and finds that doing so would be contrary to the statute's purpose.

Baker, 2015 U.S. Dist. LEXIS 56072 at page 4.

For the same reasons that this Court in the <u>Baker</u> case rejected the Defendant in that case's attempts to make certain communications outside the requirements of the FDCPA in an attempt to eviscerate the FDCPA the Court in this case should reject Defendant's arguments that attempt to place the Defendant's communications with the creditor on April 1, 2014 outside the requirements of the FDCPA to eviscerate the FDCPA by ignoring the plain language of the FDCPA including 1692e(8) and misinterpreting the holdings in the cases cited by the Defendant in its Motion. The Defendant made a voluntary decision to communicate information regarding the Plaintiff's account to the creditor on April 1, 2014 in connection with the collection of the account.

The Defendant's arguments in its Motion regarding the <u>Baker</u> case being contrary to agency principals are without merit. Contrary to Defendant's arguments - agency principals do not supercede the specific requirements of the FDCPA. Congress specifically superceded agency principals when it stated the specific requirements of the FDCPA. Additionally the evidence in this case is clear that the Defendant never communicated the disputed status of the account to the creditor. Under Defendant's arguments a debt collector would never have to communicate the disputed status of an account to the creditor regardless of the debt collectors knowledge of the disputed status of an account as in the instant case. This is an absurd result and is contrary to the plain language and purpose of the FDCPA.

## CONCLUSION

The Court for the reasons cited above and in accordance with the caselaw and authority cited above should deny the Defendant's Motion.

Respectfully submitted this 30th Day of November, 2015.

_s/ David M. Larson_____
David M. Larson, Esq.
88 Inverness Circle East, Suite E-102
Englewood, CO 80112
(303) 799-6895
Attorney for the Plaintiff

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 30th day of November, 2015, I filed the foregoing Plaintiff's Response to the Defendant's Second Motion for Summary Judgment, CM/ECF # 59, with the Clerk of the Court's CM-ECF System which will send notice of this filing to the following email addresses:

jdickinson@spencerfane.com,
jcotter@spencerfane.com

_____s/ David M. Larson_____