IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Philip A. Brimmer**

Civil Action No. 14-cv-01329-PAB-KMT

LEONA IRVINE,

Plaintiff,

v.

I.C. SYSTEM, INC., a Minnesota corporation,

Defendant.

_____

# ORDER

_____

This matter is before the Court on the Motion for Summary Judgment [Docket No. 36] and Second Motion for Summary Judgment [Docket No. 59] filed by defendant I.C. System, Inc. ("ICS"), and plaintiff's Motion for Summary Judgment [Docket No. 60]. This Court has jurisdiction pursuant to 28 U.S.C. § 1331.

## I. BACKGROUND[1]

This case arises out of defendant's alleged violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692, *et seq.* On or about March 31, 2011, plaintiff Leona Irvine incurred a debt (the "Account") to Banfield Pet Hospital. Docket No. 36-1 at 2, Statement of Undisputed Material Facts ("SUMF") 1; Docket No. 48 at 2, ¶ 1. Plaintiff defaulted on the Account by failing to make timely payments. *Id.*, SUMF 3. On November 28, 2011, the Account was transferred to ICS for collection. Docket No. 36-1 at 3, SUMF 2.

_____

[1]The following facts are undisputed unless otherwise indicated.

On March 13, 2014, plaintiff called ICS.  Docket No. 36-1 at 3, SUMF 5.  A transcription of the March 13, 2014 phone call states, in relevant part:

> [ICS representative]: [O]k it looks like you have a balance of $630.51 with Banfield Pet Hospital.
>
> * * *
>
> [Plaintiff]:  And how did it get to that?
>
> [ICS representative]:  Well there was a balance of $536.61 there was a nonpayment adjustment of $93.90 and then there was a collection charge. Yes the collection charge was $93.90.  It was originally $536.61 then they added a collection charge.
>
> [Plaintiff]:  What date is this for?
>
> [ICS representative]:  This was for March 31, 2011.
>
> [Plaintiff]:  2011?
>
> [ICS representative]:  Yes, will you be paying that in full today Leona?
>
> [Plaintiff]:  Well I don't believe it's that.  I don't owe that balance.  I don't owe that much.
>
> [ICS representative]:  Ok how much can you pay?
>
> [Plaintiff]:  Well what can we do to settle this?
>
> * * *
>
> [ICS representative]:  [T]he lowest I can go is $315.25.
>
> [Plaintiff]:  I disagree with that balance it's just too much and I want to get this settled for that.[2]
>
> [ICS representative]:  Ok that's the lowest I can go.  It's the lowest

---

[2]Plaintiff disputes the transcript's accuracy as to this line.  Docket No. 48 at 2, ¶ 6; Docket No. 48-1 at 2, ¶ 12.  Plaintiff believes this line states: "I disagree with that balance, its just too much and I want to get this settled for less than that."  Docket No. 48 at 2, ¶ 6

Banfield Pet Hospital allows me to go.

[Plaintiff]:  Well that's too much.  I can pay maybe $10 or $15 dollars a month.

* * *

[ICS representative]:  Ok, and then when were you going to have these payments posted by?  So I can set your date on here?

[Plaintiff]:  Um. . . I don't know.  Let me think here.  Only thing is this is messing up my credit report because it's on here.

[ICS representative]:  I understand.

[Plaintiff]:  So what do I have to do to get it off my credit report?

[ICS representative]:  Well the only.  I mean if you paid in full, which you said you won't be able to, but if you paid in full we will report it on Monday as paid in full zero balance then your account would have to show as paid in full for 30 days then our system will automatically request this to be deleted after showing it is paid in full for 30 days.

[Plaintiff]:  So I have to pay it off to get it off my credit report?

[ICS representative]:  No, but each payment that's made towards the account ma'am will be reported as a payment so say you pay $15 today that payment will be reported as a payment and once its paid off it will be reported as paid in full zero balance.  And then it will have to show on your account as paid in full for 30 days and then our system will automatically request this to be deleted.

[Plaintiff]:  So it's going to stay on my credit report until it's paid?

[ICS representative]:  Yes correct.

[Plaintiff]:  So I need to pay it?

[ICS representative]:  If you want it off your credit report sooner yes. Instead of doing payment arrangements for $15 a month, yes.  Correct.

* * *

[ICS representative]:  Ok ma'am well do you mind if we update the address?

[Plaintiff]:  [Provides current address]

[ICS representative]:  Ok Thank you.

Docket No. 36-3 at 1-8.

Before the March 13, 2014 phone call from plaintiff, ICS had reported the Account to Experian and TransUnion, providing information on the balance of the Account and plaintiff's address.  Docket No. 36-1 at 4, SUMF 11; Docket No. 48-2 at 41 (Bacon Rule 30(b)(6) Depo., 133:4-15).  On March 16, 2014, ICS provided plaintiff's new address to Experian and TransUnion.  Docket No. 36-1 at 4, SUMF 12.  During the March 16, 2014 communication, ICS did not identify the debt as disputed.  Docket No. 60 at 4, ¶ 8.

On March 18, 2014, plaintiff made a payment towards the Account in the amount of $15.00.  Docket No. 36-1 at 4, SUMF 14.  On March 23, 2014, defendant updated the balance information for the Account with Experian and TransUnion to reflect plaintiff's March 18 payment.  *Id*., SUMF 16.  During the March 23, 2014 communication, ICS did not identify the debt as disputed.  Docket No. 60 at 4, SUMF 10.

On March 16 and 23, 2014, ICS was a person who regularly and in the ordinary course of business furnished information to consumer reporting agencies about ICS's transactions or experiences with consumers.  Docket No. 36-1 at 4, SUMFs 13, 17.

On April 1, 2014, ICS communicated information regarding the Account to Banfield Pet Hospital via email, including plaintiff's name, the debtor reference number, the amount paid to the defendant, the amount paid to Banfield Pet Hospital, the fee due to the defendant, and the amount due to Banfield Pet Hospital.  Docket No. 60 at 5,

SUMF 11; Docket No. 59 at 2, SUMF 11.  Defendant did not indicate that the amount was disputed.  Docket No. 60 at 5, SUMF 11.

On May 12, 2014, plaintiff filed her complaint alleging that defendant's March communications violated §§ 1692e, e(2)(A), e(8), e(10), and 1692f of the FDCPA by making false, misleading, or deceptive statements and for making communication regarding the Account without also identifying the Account as a disputed debt.  Docket No. 1 at 9-10.

On May 18, 2014, ICS updated plaintiff's account information with Experian and TransUnion to show that the Account was "deleted."  *See* Docket No. 36-1 at 5, SUMF 21.[3]

On October 7, 2015, plaintiff filed an amended complaint in which she added allegations regarding defendant's April 1, 2014 communication to Banfield Pet Hospital, Docket No. 56 at 9-11, ¶¶ 63-75, and defendant's May 18, 2014 communication to Experian and TransUnion.  *Id*. at 8, ¶¶ 55-58.  Plaintiff's amended complaint contains one claim alleging violations of §§ 1692e, e(2)(A), e(8) and e(10) of the FDCPA.  *Id*. at 14, ¶ 93.

On June 29, 2015, defendant filed its first motion for summary judgment.  Docket No. 36 at 1.  Defendant's first summary judgment motion addresses plaintiff's claims relating to the March communications and argues that (1) its statement to plaintiff that

---

[3]Defendant asserts that ICS updated plaintiff's account information with Experian and TransUnion to show that the Account was both "disputed" and "deleted."  Plaintiff disputes this fact and references defendant's Rule 30(b)(6) deponent's testimony, which states that defendant did not communicate that the account was disputed, but that defendant "communicated to remove the account, to delete it."  *See* Docket No. 48-2 at 38 (Bacon Rule 30(b)(6) Depo., 130:15-23).

the debt would remain on her credit report was not false pursuant to 15 U.S.C. §§ 1692e, e(2)(A), e(8) and e(10) because there is no requirement to delete a debt from a credit report solely because it is disputed, Docket No. 36-1 at 7-8; (2) the March 16, 2014 and March 23, 2014 communications were not communications made in connection with collecting a debt under §§ 1692e or 1692f. *Id*. at 8-11.

On November 9, 2015, following the filing of plaintiff's amended complaint, defendant filed its second motion for summary judgment.  Docket No. 59.  Defendant argues that defendant's April 1, 2014 communication to Banfield Pet Hospital did not constitute debt collection activity under 15 U.S.C. § 1692e.  *Id*. at 4.

On November 9, 2015, plaintiff filed her summary judgment motion.  Plaintiff argues that the undisputed facts show: (1) the ICS representative made a false statement during the March 13, 2014 phone call; (2) ICS made a communication in connection with the collection of a debt on March 16, 2014 without identifying the debt as disputed; (3) ICS made a communication in connection with the collection of a debt on March 23, 2014 without identifying the debt as disputed; (4) ICS made a communication in connection with the collection of a debt on April 1, 2014 without identifying the account as disputed; and (5) ICS made a communication in connection with the collection of a debt on May 18, 2014 without identifying the account as disputed.  Docket No. 60 at 1-2.

## II.  STANDARD OF REVIEW

Summary judgment is warranted under Federal Rule of Civil Procedure 56 when the "movant shows that there is no genuine dispute as to any material fact and the

movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248-50 (1986). A disputed fact is "material" if under the relevant substantive law it is essential to proper disposition of the claim. *Wright v. Abbott Labs., Inc*., 259 F.3d 1226, 1231-32 (10th Cir. 2001). Only disputes over material facts can create a genuine issue for trial and preclude summary judgment. *Faustin v. City & Cty. of Denver*, 423 F.3d 1192, 1198 (10th Cir. 2005). An issue is "genuine" if the evidence is such that it might lead a reasonable jury to return a verdict for the nonmoving party. *Allen v. Muskogee*, 119 F.3d 837, 839 (10th Cir. 1997). Where "the moving party does not bear the ultimate burden of persuasion at trial, it may satisfy its burden at the summary judgment stage by identifying a lack of evidence for the nonmovant on an essential element of the nonmovant's claim." *Bausman v. Interstate Brands Corp.*, 252 F.3d 1111, 1115 (10th Cir. 2001) (quoting *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir. 1998) (internal quotation marks omitted)). "Once the moving party meets this burden, the burden shifts to the nonmoving party to demonstrate a genuine issue for trial on a material matter." *Concrete Works of Colo., Inc. v. City & Cty. of Denver*, 36 F.3d 1513, 1518 (10th Cir. 1994) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)). The nonmoving party may not rest solely on the allegations in the pleadings, but instead must designate "specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324; *see* Fed. R. Civ. P. 56(e). "To avoid summary judgment, the nonmovant must establish, at a minimum, an inference of the presence of each element essential to the case." *Bausman*, 252 F.3d at 1115 (citation omitted). When reviewing a motion for

summary judgment, a court must view the evidence in the light most favorable to the non-moving party. *Id.*; *see McBeth v. Himes*, 598 F.3d 708, 715 (10th Cir. 2010). However, where, as here, there are cross motions for summary judgment, the reasonable inferences drawn from affidavits, attached exhibits, and depositions are rendered in the light most favorable to the non-prevailing party. *Jacklovich v. Simmons*, 392 F.3d 420, 425 (10th Cir. 2004). Furthermore, "[w]hen the parties file cross motions for summary judgment, we are entitled to assume that no evidence needs to be considered other than that filed by the parties, but summary judgment is nevertheless inappropriate if disputes remain as to material facts." *Atlantic Richfield Co. v. Farm Credit Bank of Wichita*, 226 F.3d 1138, 1148 (10th Cir. 2000) (internal quotation marks omitted).

## III. ANALYSIS

The FDCPA was created in part to "eliminate abusive debt collection practices by debt collectors." 15 U.S.C. § 1692e; *Johnson v. Riddle*, 305 F.3d 1107, 1117 (10th Cir. 2002). To that end, it prohibits debt collectors from using "any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e. The statute specifically prohibits the false representation of the "character, amount, or legal status of any debt" and the "use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer." *Id*. at §§ 1692e(2)(A), (10). It further prohibits "[c]ommunicating or threatening to communicate to any person credit information which is known or which should be known to be false, including the failure to communicate

8

that a disputed debt is disputed." *Id*. at § 1692e(8).  The FDCPA provides for statutory damages of $1000, as well as costs and attorney's fees, in case of violation, regardless of whether plaintiff has shown any actual damage.  *Id*. at § 1692k.

When reviewing claims brought pursuant to § 1692e of the FDCPA, courts have used a "least sophisticated consumer" standard to determine whether a debt collector's representations were false, deceptive, misleading, unfair, or unconscionable.  *See Clomon v. Jackson*, 988 F.2d 1314, 1318 (2d Cir. 1993) (listing cases).  The least sophisticated consumer standard ensures protection to all "consumers, even the naive and the trusting, against deceptive debt collection practices, and . . . protects debt collectors against liability for bizarre or idiosyncratic interpretations of collection notices."  *Id*. at 1320.  At least seven courts of appeal have applied the least sophisticated standard to alleged violations of § 1692e and § 1692f.  *See, e.g., Clomon*, 988 F.2d at 1318; *Lesher v. Law Offices of Mitchell N. Kay, PC*, 650 F.3d 993, 1002 (3d Cir. 2011); *Elyazidi v. SunTrust Bank*, 780 F.3d 227, 234 (4th Cir. 2015); *Owsley v. Coldata*,104 F. App'x 994, 995 (5th Cir. 2004) (unpublished)*; Hartman v. Great Seneca Fin. Corp.*, 569 F.3d 606, 612 (6th Cir. 2009); *Donohue v. Quick Collect, Inc*., 592 F.3d 1027, 1033 (9th Cir. 2010); *LeBlanc v. Unifund CCR Partners*, 601 F.3d 1185, 1194 (11th Cir. 2010); *cf. Evory v. RJM Acquisitions Funding, LLC*, 505 F.3d 769, 774 (7th Cir. 2007) (using the "unsophisticated consumer" standard); *Pollard v. Law Office of Mandy L. Spaulding*, 766 F.3d 98, 103 n.4 (1st Cir. 2014) ("We adopt the unsophisticated consumer formulation to avoid any appearance of wedding the standard to the 'very last run on the sophistication ladder.'") (citation omitted).  The

Tenth Circuit has not expressly adopted this standard, but it has, in an unpublished

opinion, "applied an objective standard, measured by how the least sophisticated

consumer would interpret the notice received from the debt collector." *Ferree v.*

*Marianos*, 1997 WL 687693, at *1 (10th Cir. Nov. 3, 1997) (unpublished) (internal

quotation marks omitted).  More recently, in *Fouts v. Express Recovery Services, Inc.*,

without expressly adopting the "least sophisticated consumer" standard, the Tenth

Circuit evaluated how the "least sophisticated consumer" would understand a debt

collector's statements regarding wage garnishment.  602 F. App'x 417, 421 (10th Cir.

2015) (unpublished) (citing *Clomon*, 988 F.2d at 1318).  Because the FDCPA is a

remedial statute that "should be construed liberally in favor of the consumer," *Johnson*,

305 F.3d at 1117, the Court will apply the least sophisticated consumer standard to

plaintiff's claims brought pursuant to § 1692e.

Extending protection to the "naive and the credulous," however, does not mean

that debt collectors may be held liable for "unreasonable misinterpretations." *Clomon*,

988 F.2d at 1319.  The least sophisticated consumer is not a "dimwit," but rather

"uninformed, naive, and trusting." *Wahl v. Midland Credit Mgmt., Inc.*, 556 F.3d 643,

645-46 (7th Cir. 2009) (quoting *Veach v. Sheeks*, 316 F.3d 690, 693 (7th Cir. 2003))

(internal quotation marks omitted).  Such a consumer possesses "rudimentary

knowledge about the financial world" and is "capable of making basic logical deductions

and inferences," *Id.*, (quoting *Pettit v. Retrieval Masters Creditors Bureau, Inc.*, 211

F.3d 1057, 1060 (7th Cir. 2000)) (internal quotation marks omitted), while lacking the

"astuteness of a 'Philadelphia lawyer' or even the sophistication of the average,

everyday, common consumer." *Ferree*, 1997 WL 687693 at *1 (quoting *Russell v. Equifax A.R.S.*, 74 F.3d 30, 34 (2d Cir. 1996)) (internal quotation marks omitted).

**A.   March 13, 2014 Phone Call to Plaintiff**

### 1. Dispute of the Debt

Plaintiff alleges that, "[d]uring the telephone conversation(s) on March 13, 2014 between the Plaintiff and the Defendant regarding the Account the Plaintiff disputed the Account with the Defendant."  Docket No. 56 at 5, ¶ 35.  Defendant asserts that plaintiff did not clearly dispute her debt during the March 13, 2014 phone call.  Docket No. 36-1 at 2.

During the call, when asked if she will be paying her balance in full, Docket No. 36-3 at 2, plaintiff stated, "Well I don't believe it's that.  I don't owe that balance.  I don't owe that much."  *Id.*  Later in the conversation, the ICS representative asked if plaintiff would agree to settle the debt for $315.25, *id.* at 3, to which plaintiff responded, "I disagree with that balance it's just too much."  *Id.*  Plaintiff proposed paying $10 or $15 dollars a month, to which the ICS representative asked if plaintiff wanted to pay that on the balance or on the settlement.  *Id.*  Plaintiff responded, "I don't understand. I disagree with the balance period."  *Id.*

Based on the unchallenged portions of the call transcript, it is clear that plaintiff disputed the amount of her debt.  The question is then raised whether disputing the amount of a debt is sufficient to render a debt disputed for purposes of liability under 15 U.S.C. § 1692e.  There is no Tenth Circuit precedent on this issue and the parties do not address it.  Other courts have found that disputing the amount of a debt is sufficient

to dispute the debt itself.  *See, e.g., Boatley v. Diem Corp.*, 2004 WL 5315892, at *3 (D.

Ariz. March 24, 2004) (granting summary judgment on plaintiff's § 1692e(8) claim

because plaintiff disputed the amount of the debt listed on her consumer report, but

defendants failed to communicate the disputed status of plaintiff's debt to the consumer

reporting agency); *Palmer v. I.C. Systems, Inc.*, 2005 WL 3001877, at *9 (N.D. Cal.

Nov. 8, 2005) (plaintiff's inquiry about additional client charges, which disputed amount

of debt, provides basis for violation of § 1692e(8)).  The Court finds no basis to limit the

protections of § 1692e(8) against debt collector's "failure to communicate that a

disputed debt is disputed" to only those instances where a consumer disputes the entire

amount of a debt.

Based on the foregoing, the Court finds plaintiff's statements were sufficient to

communicate to defendant that plaintiff disputed the debt.  *See Carter v. Credit Bureau

of Carbon County*, No. 14-cv-00873-JLK, 2015 WL 4450698, at *2-3 (D. Colo. July 20,

2015 ) (finding that plaintiff's statement that she had insurance and that insurance

should have paid the debt conveyed a dispute of such debt).

### 2.  *Statement that Debt Would Stay on Credit Report*

Plaintiff argues that defendant's representation to her "that the account would

stay on the credit reports until it is paid. . . is a false representation that is material" and

that violates §§ 1692e, e(2)(A), e(8), and e(10).  Docket No. 60 at 12-13.  Defendant

argues that the law does not require disputed debts to be deleted from credit reports.

Docket No. 36-1 at 8.  Defendant contends that, as a result, "regardless of whether

plaintiff disputed her debt on March 13, the uncontroverted facts prove that ICS made a

true statement during the call when it explained that the Account would 'stay on' plaintiff's credit reports." *Id*. Plaintiff argues that, "[p]ursuant to . . . 15 U.S.C. § 1681c(a)(4) [of the FCRA], credit agencies cannot report collection accounts that are more than seven years old." Docket No. 48 at 10; Docket No. 60 at 13. Defendant responds that this statement was not a false representation because, in the context of plaintiff's $15-a-month payment plan, the Banfield Pet Hospital debt would have been paid off within the seven-year statutory window. Docket No. 53 at 5; Docket No. 62 at 11.

The call transcript reflects that plaintiff first asked the ICS representative if she needs to pay the debt to get it off her credit report, to which the ICS representative responds "No," and then proceeds to explain that, once the balance is shown as having been paid in full for thirty days, the system will request that the debt is deleted. Docket No. 36-3 at 6. Following this explanation, plaintiff asks, "So it's going to stay on my credit report until it's paid?," to which the ICS representative responds: "Yes correct." *Id*. While the earlier statement of the ICS representative does not assert that the debt will remain on plaintiff's credit report until paid, the latter statement unequivocally asserts that the debt will stay on plaintiff's credit report until it is paid. Even in the context of the payment plan, "[t]ruth is not always a defense under [the least sophisticated consumer] test, since sometimes even a true statement can be misleading." *Grden v. Leikin Ingber & Winters PC*, 643 F.3d 169, 172 (6th Cir. 2011) (citing *Miller v. Javitch, Block & Rathbone*, 561 F.3d 588, 592 (6th Cir. 2009)). The Court finds that the least sophisticated consumer would not understand the ICS representative's statements to be made in the context of the payment plan or to

13

suggest anything other than payment of the debt as a necessary condition for its removal from plaintiff's credit report.

Accordingly, the Court finds that plaintiff is entitled to summary judgment on her claim that ICS violated § 1692e during the March 13, 2014 phone call.

### B. March 16 and 23, 2014 Communications to Experian and TransUnion

Plaintiff claims that defendant violated §§ 1692e, e(2)(A), e(8), and e(10) of the FDCPA by failing to report the debt as disputed in the March 16 and 23, 2014 communications to the credit reporting agencies.  Docket No. 60 at 14.  In support, plaintiff argues that defendant's March 16 and 23, 2014 communications were elective, and thus, *Llewellyn v. Allstate Home Loans, Inc.,* 711 F.3d 1173, 1189 (10th Cir. 2013), required defendant to report the debt as disputed.  Docket No. 60 at 14.  Defendant argues that its March 16, 2014 communication to the credit reporting agencies was a communication for purposes of updating plaintiff's account information – specifically, her address – and that defendant was required to update that information pursuant to 15 U.S.C. § 1681s-2(a)(2) of the FCRA.  Docket No. 36-1 at 10.  As to the March 23, 2014 communication, defendant says that the FCRA required it to contact the reporting agencies to update the balance on the account.  Docket No. 62 at 7.  As a result, defendant contends the communications were not "in connection with collection of a debt."  15 U.S.C. § 1692e; Docket No. 53 at 8.

Section 1681s-2(a)(2) of Title 15 provides:

(2) Duty to correct and update information:

A person who–

    (A) Regularly and in the ordinary course of business furnishes

information to one or more consumer reporting agencies about the person's transactions or experiences with any consumer; and

(B) has furnished to a consumer reporting agency information that the person determines is not complete or accurate,

shall promptly notify the consumer reporting agency of that determination and provide to the agency any corrections to that information, or any additional information, that is necessary to make the information provided by the person to the agency complete and accurate, and shall not thereafter furnish to the agency any of the information that remains not complete or accurate.

Defendant relies principally on *McIvor v. Credit Control Services, Inc.*, 773 F.3d 909, 914-15 (8th Cir. 2014), where the court held that every communication between a debt collector and a credit reporting agency does not necessarily constitute collection activity.  The court found that the defendant's communication with TransUnion was made in order to comply with the FCRA and was not an elective communication for purposes of FDCPA liability.  *Id*. at 915. ("Credit Control communicated with TransUnion with the purpose of complying with the FCRA, not as an elective report of credit information.  The distinction between voluntary and required communication with consumer reporting agencies is significant.").

The Court believes that *Llewellyn* controls this issue.  *Llewellyn* held that "a debt collector does not have an affirmative duty to notify [credit reporting agencies] that a consumer disputes the debt *unless* the debt collector knows of the dispute and elects to report to a [credit reporting agency]."  711 F.3d at 1189 (emphasis in original).  Here, defendant knew of the dispute and elected to report it to a credit reporting agency.  The Court does not read into the Tenth Circuit's use of the word "elect" the voluntary-versus-required distinction made by the Eighth Circuit over a year later in *McIvor*, 773 F.3d at

915.  The instant case involves a debt collector who, in the process of updating information regarding plaintiff's account, updated only some of the information – plaintiff's address – without updating the information regarding the fact that the debt was disputed.  The Court does not interpret *Llewellyn* to permit a debt collector to update other account information without also updating "a piece of information that is always material, namely, that the consumer has disputed a particular debt."  *See* 711 F.3d at 1189 (quoting *Wilhelm v. Credico, Inc.*, 519 F.3d 416, 418 (8th Cir. 2008)).

The Court notes that defendant provided not only plaintiff's address in its March 16, 2014 communication with the credit reporting agencies, but also provided the account number, the creditor name, and the balance.  Docket No. 48-2 at 39-41 (Bacon Rule 30(b)(6) Depo., 131:23-133:15).  In its March 23, 2014 communication with the credit reporting agencies, defendant provided the account number, balance, date the account was opened, original charge-off date, billing date, date of last payment, plaintiff's name, phone number, and address.  *Id*. at 36-37, 41 (Bacon Rule 30(b)(6) Depo., 128:21-129:18, 133:11-17).  Section 1692e(8) prohibits the communication of "credit information which is known or which should be known to be false, including the failure to communicate that a disputed debt is disputed."  15 U.S.C. § 1692e(8).  Here, defendant communicated the balance on plaintiff's account, but failed to communicate the material piece of information that the balance was disputed.  Accordingly, the Court finds that, in the course of providing information to the credit reporting agencies regarding plaintiff's debt on March 16 and 23, 2014, the undisputed facts establish that defendant violated the FDCPA.  Therefore, summary judgment for plaintiff is appropriate on this claim.

16

### C. **April 1, 2014 Communication to Banfield Pet Hospital**

Both parties seek summary judgment as to defendant's April 1, 2014

communication to Banfield Pet Hospital.  Defendant argues that this communication did

not violate § 1692e of the FDCPA because it was not a communication "in connection

with the collection of a debt."  Docket No. 59 at 4.  Defendant asks the Court to adopt

the "animating purpose" test applied in the Sixth, Seventh, and Eighth Circuits.  *Id.* at 6;

*see Grden*, 643 F.3d at 173; *Gburek v. Litton Loan Servicing LP*, 614 F.3d 380, 385

(7th Cir. 2010); *McIvor,* 773 F.3d at 914.  Generally, the animating purpose test

provides that "an animating purpose of the communication must be to induce payment

by the debtor" in order to constitute a communication in connection with the collection of

a debt.  *Grden*, 643 F.3d at 173 ("a communication made specifically to induce the

debtor to settle her debt will be sufficient to trigger the protections" of the Act) (citing

*Gburek*, 614 F.3d at 385).

Defendant's April 1, 2014 communication to Banfield Pet Hospital included the

date, debtor name, debtor reference number, balance status, amount paid to agency,

amount paid to defendant, fee due to the agency, and the amount due to defendant.

Docket No. 60-2 at 5 (Bacon Rule 30(b)(6) Depo., 17:14-18).  Defendant contends that

"[t]here is absolutely no evidence in this case that the transmission of payment

information from ICS to Banfield was made with the animating purpose of inducing

Plaintiff to pay the Account" and that "the communication was clearly a ministerial

communication from Defendant to its client to report a payment."  Docket No. 59 at 6.

As to the purpose of the April 1 communication, defendant provides no direct evidence.

It merely cites the affidavit of Mr. Bacon, which states, "[o]n or about April 1 2014, ICS e-mailed Banfield the April 1, 2014 letter showing that Plaintiff had made a $15.00 payment towards the Account."  Docket No. 59-1 at 4, ¶ 18.  The Bacon affidavit does not state the purpose of the communication.  Moreover, while defendant claims that the purpose of the call was merely to update its client about a recent payment, an inference to that effect cannot reasonably be drawn from the communication since defendant communicated much more information than the fact of a payment.  Docket No. 60-2 at 5.  Given that defendant fails to provide evidence of the purpose of the April 1 communication and given that the purpose of the call is not self-evident, there is no reason to decide whether to apply the animating purpose test.

Section 1692e(8) is not limited to communications to credit reporting agencies. The Court held in *Hudspeth,* 2013 WL 674019, at *8, that "[t]he plain language of the section indicates that it applies when a collector discloses information regarding a disputed debt to any third party, not just to a credit reporting agency."

In *Baker v. I.Q. Data International, Inc.,* No. 14-cv-0114-WJM-MEH, 2015 WL 1945148 (D. Colo. April 29, 2015), a debt collector sent a letter to the creditor regarding plaintiff's account that did not state that the account was disputed.  *Id*. at *1.  Defendant argued that the letter "was not sent in connection with the collection of the debt, because it was merely a remittance sent to [the creditor] to allow [the creditor] to update its records as to the amount outstanding."  *Id*. at *4.  The letter "referenced the debt at issue, identified [p]laintiff, and described [d]efendant's debt collection efforts."  *Id*. at *5. Finding no purpose for the letter other than to provide the creditor with that information,

the *Baker* court held that the letter was sent in connection with the collection of any debt under 15 U.S.C. § 1692e.  *Id*.

Defendant argues that it was an agent of Banfield Pet Hospital for purposes of collecting a debt and therefore defendant's knowledge of the dispute should be imputed to Banfield Pet Hospital.  Docket No. 59 at 6.  This argument is misplaced.  Even if defendant was an agent of Banfield Pet Hospital, defendant does not address why its status as an agent immunizes its communications from FDCPA liability.

The Court finds that the April 1, 2014 communication was in connection with the collection of a debt pursuant to 15 U.S.C. § 1692e(8).  When defendant communicated information about plaintiff's account on April 1, 2014, it did not identify that the account was disputed.  The Court finds that defendant's failure to identify the account as disputed in the April 1, 2014 communication violated the FDCPA.  Summary judgment in favor of plaintiff is appropriate.

**D.  May 18, 2014 Communication to Experian and TransUnion**

Plaintiff seeks summary judgment as to defendant's May 18, 2014 communication to the credit reporting agencies pursuant to 15 U.S.C. §§ 1692e and 1692e(8) because defendant did not identify the account as disputed.  Docket No. 60 at 14.  Defendant argues that the purpose of the May 18, 2014 communication was to inform the credit reporting agencies that the account was disputed.  Docket No. 62 at 6. Defendant cites the affidavit of Mr. Bacon in which he states: "On May 17, 2014, ICS updated Plaintiff's account information with Experian and TransUnion to show that the

Account was 'disputed' and 'deleted.'"   Docket No. 36-2 at 3.[4]   In defendant's Rule

30(b)(6) deposition, when asked if defendant identified that account as disputed in the

May 18, 2014 communication, Mr. Bacon answered: "No.  We communicated to remove

the account, to delete it."  Docket No. 48-2 at 38 (Bacon Rule 30(b)(6) Depo., 130:15-

23).  It is unclear what the distinction between deleting and disputing an account is or

what the operative effect is of deleting an account.  Neither party has explained the

issue.  The Court finds that plaintiff has failed to provide adequate support for this

claim.  Thus, summary judgment is improper on plaintiff's claim that defendant's May

18, 2014 communication violated the FDCPA.

## IV. CONCLUSION

For the foregoing reasons, it is

**ORDERED** that defendant's Motion for Summary Judgment [Docket No. 36] is

**DENIED**.  It is further

**ORDERED** that defendant's Second Motion for Summary Judgment [Docket No.

59] is **DENIED**.  It is further

**ORDERED** that plaintiff's Motion for Summary Judgment [Docket No. 60] is

---

[4]The Court notes that Mr. Bacon's affidavit refers to a date other than May 18, 2014, on which the challenged communication occurred.  The Court assumes that this statement in Mr. Bacon's affidavit is referring to the May 18 communication.

**GRANTED** in part and **DENIED** in part.


DATED March 31, 2016.

BY THE COURT:


 s/Philip A. Brimmer
PHILIP A. BRIMMER
United States District Judge